### FRANK P. CARPENTER v. STATE.

No. 2048. Decided November 27, 1912.

**1.—Carrying Pistol—Sufficiency of the Evidence.**

Where, upon trial of unlawfully carrying a pistol, the evidence sustained the conviction, there was no error.

**2.—Same—Deputy—Want of Authority.**

Where the defendant claimed that he had authority to carry the alleged pistol, but the evidence showed that he had no such authority, and the court, nevertheless, submitted this issue to the jury, who found against the defendant, there was no error.

**3.—Same—Imminent Danger.**

Where, upon trial of unlawfully carrying a pistol, the defendant claimed that he was in imminent danger of an attack, etc., but the evidence failed to support his contention, and the court, nevertheless, submitted this issue to the jury, who found against him, the conviction was sustained.

**4.—Same—Harmless Error—Charge of Court.**

Where, upon trial of unlawfully carrying a pistol, there was no evidence that defendant had not been called on by an officer to assist in suppressing an unlawful assembly, the court should not have charged thereon; but in view of the fact that the evidence sustained the conviction under other portions of the court's charge, and that no injury resulted to defendant, there was no reversible error.

Appeal from the County Court of Frio. Tried below before the Hon. S. T. Dowe.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*John T. Bivins* and *Magus Smith,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted for unlawfully carrying a pistol on April 25, 1911, and fined $100—the lowest penalty.

The uncontradicted evidence shows that on April 25, 1911, appellant went to the town of Dilley, in Frio County, in his buggy. After reaching there he went to the depot, received a shipment of intoxicating liquors, proceeded to tank up on it, got pretty drunk and then went over to the store of Mr. Crawford, where he and his clerk were, and raised a row with Mr. Crawford, because he claimed that

Crawford had charged some of the Mexicans living on his place 20 cents each too much on three sacks of flour, and then told Crawford that he (appellant) had a pistol and that Crawford had better get his; that he then went from this store out to his buggy where his pistol was, got it, stuck it in his pants and proceeded to go back into the town to the bank building. Swink, Crawford's clerk, who was present at the time he raised the row with Crawford and told him to get his pistol, hearing later that appellant had his pistol on, went out, hunted him up, asked him if he had a pistol, appellant replied he did, and upon the request of this clerk, who was a special friend of appellant, he gave the pistol to him. As stated above, this was the uncontradicted evidence and was appellant's evidence on the trial.

Appellant's claim and defense was that he had a right to carry a pistol, had done so for years and nobody had questioned his right to do so up to this time. There is no proof in the record whatever that he was ever seen by anyone at any other time and place with a pistol, although appellant claimed that he had carried it about his person for several years. He testified that several years before this, while Mr. Kinsel was sheriff, Kinsel gave him a deputyship which had expired several years before this occurrence when that sheriff went out of office; that when Mr. Riggan, the next sheriff, came in he applied to him for a deputyship, stating to him that Mexicans in his neighborhood were stealing hogs and yearlings and that they needed an officer out there; that this sheriff declined to appoint him as deputy, stating that he had already the number of deputies allowed by law and could not appoint him and did not appoint appellant, but told him that if he caught anybody stealing hogs or yearlings to arrest them and he would protect him. That afterwards when the present sheriff, Hess, went into office on December 17, 1910, he applied to him for a deputyship, stating substantially the same thing to Mr. Hess; that Mr. Hess declined to appoint him for the same reason that his predecessor had declined; that after he got drunk and had this row with Mr. Crawford and had the pistol on his person in the town of Dilley, as shown above, some of his friends advised him that he had better get a written deputyship from the present sheriff, Mr. Hess, and have it dated back to December 17, 1910, so as to cover this particular time; that he, thereupon, went with his friend to the county seat, some seventeen miles distant, applied to the sheriff for such deputyship, wanting it in writing and dated back as shown,— not stating to the sheriff anything about the row and trouble of the day before. The sheriff declined to appoint him, but told him that if he found any Mexicans stealing hogs or cattle to arrest them and he would protect him in making such arrests. Later in the day Mr. Hess, having been telephoned about the row of the previous day, immediately wrote appellant, even countermanding what he had told him the day before, that he would protect him in making arrests.

At no time and in no way did Sheriff Hess or his predecessor give appellant any authority whatever to carry a pistol on any occasion, as shown by the testimony of this sheriff and ex-sheriff and appellant, too, on this trial.

Appellant also claimed and testified that various persons had some time before this row with Mr. Crawford told him (appellant) that Mexicans in his neighborhood had made some serious threats against appellant, not stating what they were and in no way identifying any Mexican or Mexicans. All this is shown to have occurred long prior to carrying a pistol on this occasion. The court permitted him to testify to this and to prove by other witnesses that they had so heard and told appellant prior to this occurrence, but they all, as well as appellant, stated that they could not identify any Mexican or Mexicans who had made any such threats, nor what such threats were nor the occasion for them. Appellant, however, claimed that the cause of such matters was his activity, long prior thereto, in prosecuting Mexicans for theft of hogs and cattle. As stated above, neither appellant nor any of his witnesses could tell what Mexican or Mexicans had made any threats, nor what the threats were; and none of them attempted to show that appellant was in any immediate or other danger on the occasion which he carried the pistol, from any Mexican or Mexicans. except the general statement above.

The court, in a correct charge, submitted all these questions to the jury as favorably, if not more so, to appellant than the law authorized. In his charge he required the jury to believe all the necessary facts to show appellant's violation of the law before they could find him guilty, and submitted to them, in substance, and in effect, that if appellant on the occasion which he carried the pistol had reasonable grounds for fearing an unlawful attack upon his person and that the danger therefrom was so threatening and imminent as not to admit of the arrest of the person about to make such attack, to find him not guilty. Again, that if any of these threats were to take the life of appellant and were communicated to him at and prior to his carrying a pistol on this occasion and that there was danger of such threat being carried into execution before he could have the parties arrested that he would not be guilty and to find him not guilty. And in addition, gave one of appellant's special charges as requested by him to the effect that the law permits a person to carry a pistol when his life is threatened by any person or persons or great bodily harm to him was threatened by any person or persons, and that he believed honestly that the said threats would be executed that he had a right to carry a pistol to defend himself until he had an opportunity to have such persons arrested, and his right thus existed so long as he was not out of danger from such threats, and if the jury believed that he was threatened by parties unknown to him he would have a perfect right to carry arms on or about his person to protect himself until he could have them arrested and if the jury so believed or had

reasonable doubt on that point to give him the benefit of it and acquit him.

It is unnecessary to take up and discuss separately any of the appellant's claimed errors. We have made above a correct statement substantially embracing the facts and charge of the court.

The court, at the instance of the State, did give one special charge which should not have been given to the effect that if on the occasion in which appellant carried this pistol he had not been called upon by any officer to assist in suppressing an unlawful assembly or disturbance, to convict him. The evidence may not have called for any such charge, but in view of the evidence and the other charges of the court correctly submitting the questions to the jury no other verdict than that of guilty was authorized or could have been found properly by the jury. The lowest penalty having been inflicted, no injury occurred because of the court's giving this charge.

We have considered all of appellant's claimed errors and find that none of them would justify this court to reverse this case. The judgment is affirmed.

*Affirmed.*